# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

MATTHEW TOBIN
on behalf of himself and all
others similarly situated,

     **Plaintiffs,**

v.

BEER CAPITOL DISTRIBUTING,
INC., *et al.*

     **Defendants.**

CASE NO. 12-CV-0274

HON. CHARLES N.
CLEVERT, JR.


BRIEF IN SUPPORT OF
CONDITIONAL
CERTIFICATION
AND COURT FACILITATED
NOTICE


**CROSS LAW FIRM, S.C.**
*Attorneys for Plaintiff*

Larry A. Johnson
ljohnson@crosslawfirm.com
Noah Reinstein
nreinstein@crosslawfirm.com
Nola J. Hitchcock Cross
njhcross@crosslawfirm.com

The Lawyers Building
845 N. 11th Street
Milwaukee, WI 53233
414-224-0000

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................... 1

**RELEVANT FACTS** .............................................................................................. 3

**ARGUMENT** ......................................................................................................... 7

    I.    The conditional certification process notifies potential members, early in the case, of their right to opt-into the action before their limitations period expires .................................................................................................................... 8

    II.    The established two-step certification process requires conditional certification be freely granted. ................................................................................ 10

    III.    Plaintiff has satisfied the lenient Similarly Situated standard as the Merchandisers perform the same job duties and were subject to the same compensation policies denying them overtime compensation. ............... 14

    IV.    Court authorized notice to similarly situated employees is necessary and Plaintiff's proposed notice is in conformance with notice provided in similar cases. ............................................................................................................. 18

        A.  Accurate and timely notice is essential to preserve and protect the similarly situated hourly employees' rights under the FLSA. ............. 18

        B.  Plaintiff's proposed notice is accurate and informative. ..................... 19

**CONCLUSION** ................................................................................................... 20

Case 2:12-cv-00274-CNC   Filed 04/23/12   Page 2 of 25   Document 12

# TABLE OF AUTHORITIES

*Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). ..........................9, 12, 13

*Bell v. Mynt Entm't LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004). ................................................. 13

*Brabazon v. Aurora Health Care, Inc.*, 2011 U.S. Dist. LEXIS 37057, *6-7
(E.D. Wis. Mar. 28, 2011). ................................................................10, 11, 12, 15, 17

*DeAsencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001). .............................. 13

*DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 2008 U.S. Dist. LEXIS 102318
(E.D. Wis. Dec. 17, 2008). ........................................................................................ 8, 10, 13, 15

*Ervin v. OS Rest. Servs.*, 632 F.3d 971, 976 (7th Cir. 2011).................................................8, 10, 11

*Espenscheid v. DirectSat USA, LLC*, 2010 U.S. Dist. LEXIS 55578,
*18 (W.D. Wis. June 4, 2010) ................................................................................................ 11

*Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991). ........................ 12

*Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512 at 3-4
(S.D. Fla. May 17, 2006). ........................................................................................................ 13

*Hipp v. Liberty National Ins. Co.*, 252 F. 3d 1208, 1214 (11th Cir. 2001). ................................... 12

*Hoffman-La Roche v. Sperling*, 493 U.S. 165, 169-70 (1989). ..........................2, 8, 9, 10, 12, 18, 19

*Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). ............................................. 9

*In re Pilgrim's Pride*, 2008 U.S. Dist. LEXIS 40360 (W.D. Ark. May 14, 2008). ..................... 19

*Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D. N.Y. 1995). ....................................... 12

*Johnson v. Am. Airlines, Inc.*, 531 F.Supp. 957, 961 (N.D. Tex. 1982). ..................................... 20

*Redman v. U.S. West Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998). ..................................... 18

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal. 2006). ..................... 20

*Shabazz v. Asurion Ins. Serv.*, 2008 U.S. Dist. LEXIS 29696, *3
(M.D. Tenn. Apr. 10, 2008). ....................................................................................................... 13

*Sipas v. Sammy's Fishbox, Inc.*, 2006 U.S. Dist. LEXIS 24318, *8
(S.D.N.Y. Apr. 24, 2006). ........................................................................................................... 13

*Sjoblom v. Charter Communs., LLC*, 2007 U.S. Dist. LEXIS 93879
(W.D. Wis. Dec. 19, 2007). .............................................................................................. 13

*Soler v. G & U, Inc.*, 86 F.R.D. 524, 531 (S.D.N.Y. 1980). ............................................ 20

*Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 438 (W.D. Wis. 2008). ................ 14

*Williams v. Cargill Meat Solutions Corp.*, 2010 U.S. Dist. LEXIS 72025, 3-4
(E.D. Wis. June 30, 2010). ........................................................................................ 10, 12

*Wittemen v. Wisconsin Bell, Inc.*, 2010 U.S. Dist. LEXIS 8845, * 3 (W.D. Wis. 2010) .............. 14

*Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). ............................ 14

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55 (S.D.N.Y. 2005). ........................... 13


29 U.S.C. § 207(a). ................................................................................................... 10, 17

29 U.S.C. § 216(b). ............................................................................................ 1, 10, 12

29 U.S.C. § 255. ............................................................................................................. 8

29 U.S.C. § 256(b). ......................................................................................................... 8

Case 2:12-cv-00274-CNC   Filed 04/23/12   Page 4 of 25   Document 12

Plaintiff Matthew Tobin, on behalf of himself and all other similarly situated salaried Merchandisers, seeks conditional certification of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's complaint alleges Beer Capitol Distributing, Inc., Aldo Madigrano, Ronald Fowler, and Michael Merriman (hereinafter collectively "Beer Capitol Distributing") violated the FLSA by failing to pay Plaintiff and his fellow salaried Merchandisers overtime compensation. As this case is in its infancy and the parties have not engaged in discovery, Plaintiff sets forth more than sufficient evidence that he and the putative collective action members are similarly situated. Plaintiff respectfully requests the Court grant his motion for conditional certification permitting the issuance of notice to the putative collective action members.

## **INTRODUCTION**

The Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.* allows an employee to bring and litigate their claims together as a collective action. 29 U.S.C. § 216(b) (allowing an action for unpaid overtime to be brought "by any one or more employees for and on behalf of themselves and other employees similarly situated."). The United States Supreme Court identified the benefits of collective certification to everyone involved:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by pooling of resources. The judicial system benefits by efficient

1

> resolution in one proceeding of common
> issues of law and fact arising from the
> same alleged … activity.
> *Hoffman-La Roche v. Sperling*, 493 U.S. 165,
> 169-70 (1989).

Under the FLSA, current and former employees' statutes of limitations continue to run until each individual affirmatively files a consent form with the Court. With this in mind, the conditional certification process provides a vehicle for current and former employees to receive timely and informative notice of their rights under the FLSA. The continued running of each individuals statute of limitations makes timely notice imperative – current and former employees' rights to recover back wages may be extinguished and lost forever before they even know that their rights have been violated. For this reason, conditional certification is often granted prior to discovery and upon the allegations in the complaint and a handful of declarations.

Plaintiff respectfully moves the Court to conditionally certify this case as a collective action and authorize timely notice, informing each similarly situated employee of their rights, to the following class:

> All individuals who are or have been
> employed by Beer Capitol Distributing or
> Beer Capitol Distributing, Lake Country as
> a salaried Merchandiser and who have not
> been paid overtime premium
> compensation at a rate of time and one-
> half the regular rate for all hours worked

over forty in any workweek since March 21, 2009.

Conditional certification of this matter is warranted as the salaried Merchandisers performed the same job duties and were paid under Beer Capitol Distributing's uniform and illegal policy denying them overtime premium compensation when they work over forty hours in a workweek.

## **RELEVANT FACTS**

Beer Capitol Distributing is a Wisconsin Corporation and is the largest beer distributor in Wisconsin. (Compl. ¶¶ 2, 8.) In 2008, Beer Capitol Distributing acquired Miller Brands-Milwaukee, LLC. (Jensen Decl. ¶ 3.) In 2009, W.O.W. Distributing was acquired by Beer Capitol Distributing – Lake Country. (Riopell Decl. ¶ 3.) Beer Capitol Distributing – Lake Country later merged with Beer Capitol Distributing. (Riopell Decl. ¶ 3.)

Beer Capitol Distributing employs numerous employees who work as Merchandisers. (Compl. ¶ 16.) Beer Capitol Distributing's Merchandisers, including Plaintiff and the other opt-ins, perform the same job duties for Beer Capitol Distributing as other Merchandisers. Beer Capitol Distributing's Merchandisers travel to Beer Capitol Distributing's customers' locations to place product and sales material in those locations. (Compl. ¶ 18; Answer ¶ 19; Jensen Decl. ¶¶ 11-12; Williams Decl. ¶¶ 11-12; Hannon Decl. ¶¶ 11-12; Riopell Decl. ¶¶ 11-

3

12.) The Merchandisers stock shelves, assemble and move displays, and hang signage and other advertising material around the customer locations. (Compl. ¶ 18; Answer ¶ 19; Jensen Decl. ¶ 11; Williams Decl. ¶ 11; Hannon Decl. ¶ 11; Riopell Decl. ¶ 11.) Additionally, Merchandisers rotate the product so that older product is sold first and that product which is too old is removed from the store shelves. (Compl. ¶ 18; Answer ¶ 19; Jensen Decl. ¶ 11; Williams Decl. ¶ 11; Hannon Decl. ¶ 11; Riopell Decl. ¶ 11.) Beer Capitol Distributing's Merchandisers perform these same duties. (Jensen Decl. ¶ 12; Answer ¶ 19; Williams Decl. ¶ 12; Hannon Decl. ¶ 12; Riopell Decl. ¶ 12.) Beer Capitol Distributing's Merchandisers do not load or unload product from Beer Capitol Distributing's delivery vehicles; the product has already been delivered to the customer locations by other Beer Capitol Distributing employees. (Jensen Decl. ¶ 11; Williams Decl. ¶ 11; Hannon Decl. ¶ 11; Riopell Decl. ¶ 11.)

Beer Capitol Distributing compensated its Merchandisers the same fixed amount of compensation when they worked five days in a workweek, regardless of the amount of hours worked.[1] (Jensen Decl. ¶¶ 5, 6; Williams Decl. ¶¶ 5, 6; Hannon Decl. ¶¶ 5, 6; Riopell Decl. ¶¶ 5, 6.) That fixed amount is equivalent to five eight-hour days and

---

[1] It is Plaintiff's Counsel's understanding that Beer Capitol Distributing has, since the inception of this lawsuit, modified its compensation policy as to all Beer Capitol Distributing Merchandisers. Under the new policy, the Merchandisers are paid by the hour and receive overtime compensation.

4

was intended to compensate the Merchandisers for forty hours of work. (Jensen Decl. ¶ 5; Williams Decl. ¶5; Hannon Decl. ¶ 5; Riopell Decl. ¶ 5.) Similarly, when the Merchandisers work a sixth day in a workweek, they were paid the same fixed amount regardless of the actual number of hours worked in that workweek. (Jensen Decl. ¶ 7; Williams Decl. ¶ 7; Hannon Decl. ¶ 7; Riopell Decl. ¶ 7.) That fixed amount is equivalent to six eight-hour days and is intended to compensate the Merchandisers for forty-eight hours of work. (Jensen Decl. ¶ 7; Williams Decl. ¶ 7; Hannon Decl. ¶ 7; Riopell Decl. ¶ 7.)

Whether the Merchandisers worked five days a workweek or six days a workweek, they did not receive additional compensation when they worked more than forty hours in a workweek. (Compl. ¶ 21; Jensen Decl. ¶ 6; Williams Decl. ¶ 6; Hannon Decl. ¶ 6; Riopell Decl. ¶ 6.) When a Merchandiser worked five ten-hour days, that Merchandiser was only paid for five eight-hour days. (Jensen Decl. ¶ 6; Williams Decl. ¶ 6; Hannon Decl. ¶ 6; Riopell Decl. ¶ 6.) When a Merchandiser worked six ten-hour days, the Merchandiser was only paid for six eight-hour days. (Jensen Decl. ¶ 7; Williams Decl. ¶ 7; Hannon Decl. ¶ 7; Riopell Decl. ¶ 7.) Either way, under Beer Capitol Distributing's uniform compensation policies, the Merchandisers were not paid time and one-half the regular rate when they worked more than forty hours in a workweek. (Jensen Decl. ¶¶ 5-7; Williams Decl.

5

¶¶ 5-7; Hannon Decl. ¶¶ 5-7; Riopell Decl. ¶¶ 5-7.) Apparently, Beer

Capitol Distributing lacks sufficient information to form a basis for a

belief as to whether Plaintiff or the salaried Merchandisers were paid

any additional compensation beyond their salary when they worked

over forty hours. (Compl. ¶¶ 27-28; Answer ¶¶ 27-28.)

      Beer Capitol Distributing's compensation policy denying its

Merchandisers overtime premium compensation is uniform in its

application to each salaried Merchandiser at Beer Capitol Distributing.

(Jensen Decl. ¶ 8; Williams Decl. ¶ 8; Hannon Decl. ¶ 8; Riopell Decl.

¶ 8.) At various meetings throughout the previous five years, in the

presence of numerous Merchandisers, Joseph Egan, a supervisor over a

subset of Merchandisers, explained that Beer Capitol Distributing's

Merchandisers were paid a salary. (Williams Decl. ¶ 8.) At a recent

meeting, the compensation policy at Beer Capitol Distributing was

again discussed and it was explained by Bob Steiner, a supervisor over

a subset of Merchandisers, that the compensation would be changing

from salary to hourly. (Jensen Decl. ¶ 8; Hannon Decl. ¶ 8; Riopell

Decl. ¶ 8.) Under this Beer Capitol Distributing's new uniform

compensation policy, Merchandisers will be paid overtime

compensation when they work more than forty hours a workweek.

(Jensen Decl. ¶ 8; Hannon Decl. ¶ 8; Riopell Decl. ¶ 8.) Moreover,

Merchandisers have discussed their compensation with each other and

have confirmed that they were not paid overtime compensation under Beer Capitol Distributing uniform policy. (Jensen Decl. ¶ 9; Williams Decl. ¶ 9; Hannon Decl. ¶ 9; Riopell Decl. ¶ 9.)

Finally, Beer Capitol Distributing's Merchandisers record the time they work each day on its monthly timesheets which each Merchandiser submitted to Beer Capitol Distributing. (Jensen Decl. ¶ 14; Williams Decl. ¶ 14; Hannon Decl. ¶ 14; Riopell Decl. ¶ 14.)

Plaintiff filed his complaint on March 21, 2012 along with his opt-in form. (Dkts. 01-0 and 01-6.) Since filing the Complaint, Lee Riopell, Chris Jensen and Chary Williams have opted into the action in anticipation of it being conditionally certified. (Dkts. 03-1, 04-1, 09-1.) Beer Capitol Distributing answered the Complaint on April 23, 2012. (Dkt. 10-0.) The parties have not engaged in any formal discovery, nor have they met pursuant to FED. R. CIV. P. Rule 26(f) to discuss a discovery plan. (Johnson Decl. ¶ 3.) Plaintiff's Counsel asked Beer Capitol Distributing's Counsel if they would be willing to stipulate to conditional certification but an agreement was not reached. (Johnson Decl. ¶ 4.)

## ARGUMENT

Conditional certification of this action is proper as Plaintiff, through the allegations in the Complaint and the declarations filed in support of his motion, has established the he and his fellow

7

Merchandisers are sufficiently similarly situated. In the sections below, Plaintiff will set out the purpose and importance of conditional certification, the two-step process of conditional certification, that this matter is appropriate for conditional certification and that Plaintiff's proposed notice is appropriate.

## I. The conditional certification process notifies potential members, early in the case, of their right to opt-into the action before their limitations period expires.

Three important features of a collective action under the FLSA lend themselves to early court interaction through the collective action process and provision of notice. First, to participate in a collective action, an employee must opt-in to the lawsuit, or affirmatively give consent in writing to become such a party and that consent must be filed with the Court. *Hoffman-La Roche*, 493 U.S. at 168; *Ervin v. OS Rest. Servs.*, 632 F.3d 971, 976 (7th Cir. 2011).

Second, an employee's statute of limitations continues to run on their FLSA claims until he/she files his individual opt-in form with the Court. 29 U.S.C. §§ 255 and 256(b); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 2008 U.S. Dist. LEXIS 102318 (E.D. Wis. Dec. 17, 2008). Because the putative collective action members statutes of limitations continue to run until they affirmatively opt-in, "courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a

8

proceeding, typically before any significant discovery, upon an initial showing that the members of the class are similarly situated." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).

Third, to serve the "broad and remedial purpose" of the FLSA, courts commonly order notice to potentially similarly situated employees in order to inform them of the opportunity to opt-in to the lawsuit. *Hoffman-La Roche*, 493 U.S. at 170 (the benefits from proceeding collectively "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."). Because of the FLSA's "opt-in" requirement, "a representative plaintiff must be able to inform other individuals who may have similar claims that they may join his lawsuit." *Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

Conditional certification and the "[a]uthorization of notice serves the broad, remedial purpose of the [FLSA] and comports with the court's interest in managing its docket." *Hoffmann-LaRoche*, 493 U.S. at 172-74; *Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. at 605. In light of these differing features of an FLSA collective action, collective action certification and the sending of accurate and timely court approved notice avoids multiplicity of duplicative suits, allows for the court to set various deadlines to advance the case as one case, and it protects

putative collective action members claims from expiring under the statute of limitations. *Hoffman-La Roche*, 493 U.S. at 171-73.

## II. The established two-step certification process requires conditional certification be freely granted.

The FLSA permits "employees to act together to seek redress for violations of the [FLSA's] minimum wage and maximum hour provisions" contained in 29 U.S.C. §§ 206 and 207. *Ervin*, 632 F.3d at 974; 29 U.S.C. § 216(b) ("[a]n action … may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.").

When faced with the question of whether collective treatment is appropriate, courts consider whether the plaintiffs have shown the existence of a definable class of plaintiffs who are "similarly situated." *Hoffmann-La Roche*, 493 U.S. at 170; *Brabazon v. Aurora Health Care, Inc.*, 2011 U.S. Dist. LEXIS 37057, *6 (E.D. Wis. Mar. 28, 2011). As the FLSA does not set out a method for determining whether potential plaintiffs are similarly situated to a representative plaintiff and the "Seventh Circuit has not yet addressed the issue, courts in this district and other districts in this circuit, generally employ a two-phase inquiry in determining who is similarly situated and, thus, entitled to notice." *Brabazon v. Aurora Health Care, Inc.*, 2011 U.S. Dist. LEXIS 37057, *6-7 (E.D. Wis. Mar. 28, 2011); *see also Williams v. Cargill Meat Solutions Corp.*, 2010 U.S. Dist. LEXIS 72025, 3-4 (E.D. Wis. June 30, 2010); *DeKeyser*,

2008 U.S. Dist. LEXIS 102318, at *5-6. Though the Seventh Circuit did not squarely adopt the two-step process, the Seventh Circuit did recognize the use of the conditional certification process as "a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin*, 632 F.3d 971.

At the first step of the two-step conditional FLSA certification process, a Plaintiff must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Brabazon*, 2011 U.S. Dist. LEXIS 37057, *7 (internal quotations and citations omitted). This determination does not involve adjudication of the merits of the claims; rather, "plaintiff must demonstrate only that there is some factual nexus that connects [him] to other potential plaintiffs as victims of an unlawful practice." *Brabazon*, 2011 U.S. Dist. LEXIS 37057, *7-8; quoting *Espenscheid v. DirectSat USA, LLC*, 2010 U.S. Dist. LEXIS 55578, *18 (W.D. Wis. June 4, 2010). It is not whether the Plaintiff has established that an actual violation of the law has occurred, but rather "whether the proposed plaintiffs are similarly situated … with respect to their allegations that the law has been violated." *Brabazon*, 2011 U.S. Dist. LEXIS 37057, *8 (internal quotation omitted). If this showing is

made, "the court conditionally certifies a class, authorizes notice and the parties conduct discovery." *Austin*, 232 F.R.D. at 605. The second step of the two-step process "occurs after discovery, when the defendant asks the court to determine whether the opt-ins are in fact similarly situated." *Williams*, 2010 U.S. Dist. LEXIS 72025, *4.

Because this case, like other first step conditional certification cases, "is in its early stages, Plaintiff's burden is not a high one." *Austin*, 232 F.R.D. at 605; *Brabazon*, 2011 U.S. Dist. LEXIS 37057, *7 (the burden is fairly lenient.). In light of the FLSA's remedial purpose, courts have repeatedly held that the similarly situated requirement of 216(b) must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See, Hipp v. Liberty National Ins. Co.*, 252 F. 3d 1208, 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D. N.Y. 1995) (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims."); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (rigorous inquiry into § 216(b)'s similarly situated requirement "would unnecessarily hinder the development of collective action and would undermine the 'broad remedial goals' of the anti-discrimination provisions of the FLSA." (quoting *Hoffman-LaRoche*, 493 U.S. at 173)).

12

In determining whether Plaintiff has made this initial showing, courts rely on the complaint and any declarations submitted. *Sjoblom*, 2007 U.S. Dist. LEXIS 93879, *27; *Austin*, 232 F.R.D. at 606. Courts do not need an excessive amount of support to grant the motion. *DeKeyser*, 2008 U.S. Dist. LEXIS 102318, at *11 (seven affidavits sufficient to conditionally certify class of four thousand employees); s*ee also Shabazz v. Asurion Ins. Serv.*, 2008 U.S. Dist. LEXIS 29696, *3 (M.D. Tenn. Apr. 10, 2008) (four declarations sufficient); *Sipas v. Sammy's Fishbox, Inc.*, 2006 U.S. Dist. LEXIS 24318, *8 (S.D.N.Y. Apr. 24, 2006) (three affidavits and the contents of the complaint sufficient); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55 (S.D.N.Y. 2005) (one affidavit sufficient when potential opt-ins all have the same job and were all classified as exempt at over 108 facilities in 21 states); *Bell v. Mynt Entm't LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (seven affidavits demonstrating a "reasonable basis" sufficient); *Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512 at 3-4 (S.D. Fla. May 17, 2006) (two affidavits constituted a "rudimentary showing of commonality" sufficient for conditional certification and judicial notice); *DeAsencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (four affidavits sufficient).

At this first step, the "requirements of conditional certification are lenient because approval simply allows plaintiffs to provide notice

to other potential class members so that they may make an informed decision whether to join the case." *Wittemen v. Wisconsin Bell, Inc.*, 2010 U.S. Dist. LEXIS 8845, * 3 (W.D. Wis. 2010). As previously explained, early and accurate notice is imperative as the putative collective action members statues of limitations continue to run. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). The FLSA "does not explicitly require the district court to certify a collective action under the FLSA … the duty is implicit in the status and the Federal Rules of Civil Procedure." *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 438 (W.D. Wis. 2008). As set out below, Plaintiff has established that he and other similarly situated Merchandisers were subjected to the same policies, performed the same job duties, and maintained the same records of the hours they worked. Timely and informative notice is therefore necessary to meet the FLSA's remedial goals and to efficiently move this matter forward.

### III. Plaintiff has satisfied the lenient Similarly Situated standard as the Merchandisers perform the same job duties and were subject to the same compensation policies denying them overtime compensation.

As the Court is not required to "find uniformity in each and every aspect of employment to determine a class of employees is similarly situated," Plaintiff has established that he and other salaried Merchandisers employed by Beer Capitol Distributing are sufficiently similarly situated with regard to Beer Capitol Distributing's

14

compensation practices, job duties, and other conditions of work. *DeKeyser*, 2008 U.S. Dist. LEXIS 102318, * 13 (internal citations omitted). Plaintiff's burden is not heavy and is met by making a "modest factual showing sufficient to show they were subjected to the same policy denying them overtime wages." *Id.* The alleged violations of law contained in Plaintiff's Complaint, and as further supported by declarations of similarly situated employees contemporaneously filed with this motion, provide the requisite "factual nexus that connects [Plaintiff] to other potential plaintiffs as victims of an unlawful practice" at the hand of Beer Capitol Distributing. *Brabazon v. Aurora Health Care, Inc.*, 2011 U.S. Dist. LEXIS 37057, *7-8. The factual nexus that connects Plaintiff and Beer Capitol Distributing's other salaried Merchandisers is that each salaried Merchandiser performed the same or similar job duties, were subject to the same compensation policies, and were not paid overtime premium compensation when they worked in excess of forty hours a workweek.

Plaintiff's Complaint alleges he and the salaried Merchandisers performed almost identical job duties. According to Plaintiff's supporting declarations, Merchandisers' job duties include:

- Traveling to customer locations;
- Stocking product on shelves;
- Assembling and moving displays;
- Hanging signage and other advertising materials; and

- Rotating product so that older product is sold first and product which is too old is removed.

Moreover, Beer Capitol Distributing's merchandisers do not load or unload product from Beer Capitol Distributing's delivery vehicles as the product that is shelved has already been delivered by other Beer Capitol Distributing employees.

Plaintiff's Complaint alleges Beer Capitol Distributing uniformly applied the same compensation practices to each of Beer Capitol Distributing's Merchandisers. According to Plaintiff's supporting declarations, until recently, Beer Capitol Distributing paid each salary Merchandiser in a similar fashion. In workweeks in which the salaried Merchandisers worked five days, Beer Capitol Distributing paid their salaried Merchandisers the same fixed amount of compensation regardless of the number of hours they work – a fixed amount equivalent to five eight-hour days. In workweeks in which the salaried Merchandisers were scheduled to work on a sixth day, they would receive a fixed amount of compensation regardless of the amount worked – a fixed amount equivalent to six eight-hour days. Regardless of the actual number of hours worked, the salaried Merchandisers they were paid the same fixed rate equal to either forty or forty-eight hours.

Plaintiff contends Beer Capitol Distributing's pay practices uniformly violate the FLSA. One of the cornerstones of the FLSA is the requirement that employers pay overtime. That is, no employer

16

shall employ any employee "for a workweek longer than forty hours …
unless such employee receives compensation for his employment … at
a rate not less than one and one-half times the regular rate at which he
is employed." 29 U.S.C. § 207(a). Beer Capitol Distributing operated
under a compensation policy which denied overtime premium
compensation to each of their salaried Merchandisers. Whether
Merchandisers worked forty hours in five days, or fifty hours in five
days, they were paid the same amount under Beer Capitol
Distributing's uniform policies. Likewise, whether the salaried
Merchandisers worked sixty hours or forty-eight hours in six days, they
were paid the same amount under Beer Capitol Distributing's
compensation policies. This uniform policy is at the heart of Plaintiff's
complaint.

Because Beer Capitol Distributing applied the same no overtime
compensation policy to its salaried Merchandisers and because they
performed the same job duties, they are sufficiently similarly situated to
permit notice of this lawsuit to be disseminated. Conditional
certification is appropriate here as Plaintiff has established that he and
the other Merchandisers "are similarly situated … with respect to their
allegations that the law has been violated" – that they were not paid
overtime when they should have been. *Brabazon*, 2011 U.S. Dist.
LEXIS 37057, *8.

## IV. Court authorized notice to similarly situated employees is necessary and Plaintiff's proposed notice is in conformance with notice provided in similar cases.

As Plaintiff has met their initial burden that they were subjected to the same illegal policies and practices as other salaried Merchandisers employed by Beer Capitol Distributing, this Court should authorize notice to be sent to the similarly situated employees. In so doing, the Court should exercise its discretion in ensuring that the similarly situated employees receive notice that is timely, accurate, and informative.

### A. Accurate and timely notice is essential to preserve and protect the similarly situated employees' rights under the FLSA.

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving *accurate* and *timely* notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170 (emphasis added). District courts are encouraged to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help maintain control of the litigation. *Id.* at 171-72.

The prompt provision of Court approved notice will limit the diminishment of putative collective action members legal rights due to the running of the statute of limitations on their claims. *See Redman v.*

18

*U.S. West Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998).

Furthermore, conditional certification of this collective action will protect judicial economies as deciding whether Beer Capitol Distributing's compensation policies violate the FLSA as to all salaried Merchandisers, rather than on an individual basis, will vastly conserve judicial resources. Finally, without notice, and because Plaintiff has not yet been able engage in class discovery to obtain a class list, many putative collective action members may not know that their federally protected right to be paid overtime premium compensation may have been violated.

### B. Plaintiff's proposed notice is accurate and informative.

Plaintiff's proposed "Notice of FLSA Lawsuit," attached as Exhibit A, is "timely, accurate, and informative." *See Hoffman-LaRoche*, 493 U.S. at 172. It is carefully drafted to mirror notice forms that courts have approved in other FLSA cases, and to state, in plain, non-legal terms, the nature of the claims, the rights of all parties involved, and the employee's right to be free from retaliation.

Dissemination of notice through first class mail in addition to other methods, such as posting within a workplace, ensures that potential collective action members receive sufficient notice. *See In re Pilgrim's Pride*, 2008 U.S. Dist. LEXIS 40360, *3 (W.D. Ark. May 14, 2008) (ordering notice to be posted at defendant facilities "in a place

19

visible and accessible to…processing workers"); *see also Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) (authorizing notice by first class mail and through postings at the putative plaintiffs' workplaces); *Johnson v. Am. Airlines, Inc.*, 531 F.Supp. 957, 961 (N.D. Tex. 1982) (notice reasonable when communicated by direct mail, publication, and postings on company bulletin boards at various locations); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 531 (S.D.N.Y. 1980) (plaintiffs authorized to post and mail the proposed notice). Plaintiff requests this additional form of notice as Beer Capitol Distributing's database of contact information may not be up to date or may have errors. Moreover, putative collective action members might disregard the mail notice as they are unaware of its significance.

## **CONCLUSION**

At this preliminary stage, Plaintiff has produced a factual basis from which this Court should determine that similarly situated plaintiffs exist. Plaintiff and the putative collective action members performed the same job duties, were paid under the same compensation policy and were uniformity denied overtime premium compensation. Therefore, Plaintiff respectfully request the Court follow the well established precedent from the United State Supreme Court, as well as recent district court cases from this district and around the country, and issue an order: 1) conditionally certifying the

class as a collective action; 2) appointing counsel of record as Collective Action Counsel; 3) approving the form and content of the Notice of Collective Action; and 4) ordering Beer Capitol Distributing provide Collective Action Counsel a list of all person known to Beer Capitol Distributing to meet the above definition, including their name, address, phone number, and the first five digits of their social security number in an Microsoft Excel spreadsheet with each piece of information set out in a separate column; and 5) permitting the putative Collective Action members 75 days from the mailing of Notice to opt into this action.

Respectfully submitted this 23th day of April, 2012.

**CROSS LAW FIRM, S.C.**
*Attorneys for Plaintiff*

**s/LARRY JOHNSON**
Larry A. Johnson
ljohnson@crosslawfirm.com
Noah Reinstein
nreinstein@crosslawfirm.com
Nola J. Hitchcock Cross
njhcross@crosslawfirm.com
The Lawyers Building
845 N. 11th Street
Milwaukee, WI 53233
414-224-0000

21