## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| MATTHEW TOBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Honorable Charles N. Clevert, Jr. |
| | ) | |
| BEER CAPITOL DISTRIBUTING, INC., | ) | Case No. 2:12-CV-00274 |
| ALDO MADIGRANO, | ) | |
| RONALD FOWLER, | ) | |
| and MICHAEL MERRIMAN | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

**JACKSON LEWIS, LLP**
Attorneys for Defendants

Ann Barry Hanneman, Esq. (SBN 1008899)
Brian G. Nuedling, Esq. (SBN 1035493)
20975 Swenson Drive, Suite 250
Waukesha, WI 53186
Telephone: (262) 717-3170
Facsimile: (262) 717-3186
Email: ann.hanneman@jacksonlewis.com
        brian.nuedling@jacksonlewis.com

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................   1

II.  BACKGROUND .....................................................................   1

III. FACTUAL AND LEGAL ANALYSIS ................................................   4

     A.   "SIMILARLY SITUATED" INDIVIDUALS .......................   4

          1. Beer Capitol's merchandisers are not interchangeable ....   6

          2. A generic job description does not mean that employees
             are 'similarly situated' …………………………………………   8

          3. Cursory assertions are insufficient for a grant of
             conditional certification …………………………………………   9

          4. Proposed class members may not have been subject to
             the same compensation policies …………………………...   11

          5. Some merchandisers may have performed work
             that is not compensable …………………………………………   13

     B.   "OUTSIDE SALES" EXEMPTION .........................................   15

          1. Beer Capitol merchandisers, fall within the parameters
             Outside sales exemption …………………………………………   15

          2. Beer Capitol merchandisers look for sales opportunities ....   16

IV.  CONCLUSION ...................................................................   17

## TABLE OF AUTHORITIES

*Adair v. Wisconsin Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942
(E.D. Wis. Sept. 11, 2008) ……………………………………………………    5, 14

*Aguirre v. SBC Commc'n, Inc.*, 2006 U.S. Dist. LEXIS 22211
(S.D. Tex. Apr. 11, 2006) ……………………………………………………    7

*Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433 (E.D. Va. 2002) ……    5

*Boyd v. Jupiter Aluminum Corp.*, 2006 U.S. Dist. LEXIS 35654
(N.D. Ind. May 31, 2006) ……………………………………………………...    5

*Drew v. Shoe Show, Inc.*, 2011 U.S. Dist. LEXIS 106503
(S.D. Ill. Sept. 19, 2011) ……………………………………………………    8

*Dreyer v. Altchem Envtl. Serv.*, 2007 U.S. Dist. LEXIS 71048
(D.N.J. Sept. 25, 2007) ……………………………………………………    10, 11

*Freeman v. Wal-Mart Stores,* 256 F. Supp. 2d. 941 (W.D. Ark. 2003) ……..    14

*Hoffmann-La Roche, Inc., v. Sperling*, 493 U.S. 165  (1989) ………………..    5

*Hodgson v. Greene's Propane Gas Serv., Inc.*, 1971 U.S. LEXIS 14602
(D.Ga. Feb. 16, 1971) ……………………………………………………    15, 16

*Hodgson v. Krispy Kreme Doughnut Co.*, 346 F. Supp. 1102 (M.D. N.C. 1972)    15

*Jenkins v. The TJX Cos.*, 2012 U.S. Dist. LEXIS 46394
(E.D.N.Y. Mar. 31, 2012) ………………......................................................    5, 6

*Jirak v. Abbott Lab. Inc.*, 716 F. Supp. 2d 740 (N.D. Ill. 2010) ………………    17

*Kronick v. Bebe Stores, Inc.*, 2008 U.S. Dist. LEXIS 78502
(D.N.J. Oct. 2, 2008) ……………………………………………………    11

*Kuebel v. Black & Decker, Inc.*, 643 F.3d 352 (2d Cir. 2011) ……….............    4

*Marlo v. United Parcel Serv.*, 639 F.3d 942 (9th Cir. 2011) …………………    6

*Martinez v. Regency Janitorial Serv.*, U.S. Dist. LEXIS 8941
(E.D. Wis. Jan. 26, 2012) ……………………………………………………    12

*MacGregor v. Farmers Ins. Exch.*, 2011 U.S. Dist. LEXIS 80361
(D.S.C. July 22, 2011) ……………………………………………………    12

*Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) …………………………………    11

iii

*Prise v. Alderwoods Group, Inc.*, 817 F. Supp. 2d 651 (W.D. Pa. 2011) …............ 12

*Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626 (7th Cir. 2010) ….. 15

*Shim v. Echosphere, L.L.C.*, 2010 U.S. Dist. LEXIS 135984
(S.D. Fla. Dec. 20, 2010) …………………………………………….. 12, 13

*Sjoblom v. Charter Commc'n*, 571 F. Supp. 2d 961 (W.D. Wis. 2008) ……… 11

*White, et al., v. Rick Bus Co.*, 743 F. Supp. 2d 380 (D. N.J. 2010) ………... 4, 5


29 C.F.R. § 541.500(a)(1), (2) ………………………………………………. 15

29 C.F.R. § 541.500(a)(2)(b) ………………………………………………… 15

29 C.F.R. §§ 785.27-785.32 …………………………………………………. 14

29 C.F.R. § 785.47 ………………………………………………………….. 14

29 U.S.C. § 201 ……………………………………………………………… 1, 4

29 U.S.C. § 207(a)(1) ……………………………………………………….. 4

29 U.S.C. § 216(b) ………………………………………………………….. 4

29 U.S.C. § 254(a) ………………………………………………………….. 14

iv

## I. INTRODUCTION

The Defendants, Beer Capitol Distributing, Inc., Aldo Madigrano, Ronald Fowler, and Michael Merriman (collectively, "Beer Capitol"), file this response in opposition to the Plaintiff's Motion for Conditional Certification. The variability in the job duties of the proposed class, coupled with the uncertainty that they were, in fact, subject to an identical compensation policy, makes the proposed employee group unsuitable for class treatment.

The likelihood is that a trier-of-fact would have to conduct individual evaluations on class members regarding their job duties, the application of Beer Capitol policies to individual circumstances, and whether claims for unpaid "overtime" compensation are appropriate under certain factual issues, such as lunch breaks. As a result, the proposed class is too unwieldy and individualized to make class treatment appropriate or judicially effective. Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

## II. BACKGROUND

On March 21, 2012, the Plaintiff filed a collective and class action complaint ("the Complaint") in this court, pursuant to several wage and hour statutes, including Wisconsin wage statutes and the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*), alleging that Beer Capitol implemented an unlawful compensation system that impermissibly failed to pay merchandisers overtime compensation for hours worked in excess of forty (40) in a workweek. (Compl., Dkt. #1.)

The Plaintiff, on behalf of himself and other "similarly situated" employees, alleges a common policy or practice, allegedly applied uniformly to all merchandisers,

1

that impermissibly denied them of "overtime" compensation when they worked more than eight (8) hours in a single day or more than forty (40) in a single workweek. Id. The Plaintiff further alleges a "willful" violation of the provisions of the Fair Labor Standards Act, thereby seeking a one-year extension of the statute of limitations, to three (3) years, and asking that any relief that might be awarded include liquidated damages. Id.

On April 23, 2012, the Plaintiff filed the instant Motion, requesting that this Court conditionally certify the following proposed "class":

> "All individuals who are or have been employed by Beer Capitol Distributing or Beer Capitol Distributing, Lake Country as a salaried Merchandiser and who have not been paid overtime premium compensation at a rate of time and one-half the regular rate for all hours worked over forty in any workweek since March 21 2009. (Dkt. #11.)

In support of this motion, the Plaintiff contemporaneously filed declarations of four (4) individuals: James Hannon Jr. (Dkt. #13), Chary Williams (Dkt. #14), Chris Jensen (Dkt. #15), and Lee Riopell (Dkt. #16). Messrs. Hannon and Jensen state that they are current employees of Beer Capitol, while Messrs. Williams and Riopell state that they are former employees. Id.

The four (4) declarants make identical assertions with respect to the terms and conditions of their employment with Beer Capitol:

■    Each alleges having worked more than five (5) days in a week, or more than forty (40) hours in a single week, without receiving "overtime" compensation. (Dkt. ##13-16, ¶¶ 5, 6.) However, none of them states when the overtime work allegedly occurred, how often the overtime work allegedly occurred, the circumstances under which the overtime work allegedly occurred, the number of alleged hours of overtime

2

during the relevant period, or the total amount in overtime compensation that each is allegedly owed.

■    Each alleges being "paid the same way as other Merchandisers at Beer Capitol Distributing." (Dkt. ##13-16, ¶ 8.) The declarants make this claim despite the fact that none of them is a member of the Beer Capitol management, none of them has access to Beer Capitol's payroll records, none of them sets policy with respect to the terms and conditions of employment with Beer Capitol, and none of them has any role in setting the compensation for any Beer Capitol employee. (Zeman Decl. ¶ 4.)

■    As to present or past employment with Beer Capitol, each alleges exactly the same job duties: "I travel to customer locations in Beer Capitol Distributing's vehicle, I stock product on shelves that has previously been delivered and unloaded, place signs around customer locations, I assemble and move displays, and place other advertising materials. I also rotate produce to make sure that the older product is sold first and to ensure that product which is too old is removed." (Dkt. ##13-16, ¶ 11.) However, the identical job descriptions disregard differences in the structure of merchandisers' jobs that, for the purposes of class certification, make them factually unique. (Driscoll Decl. ¶¶ 5-6; Zeman Decl. ¶¶ 7-9.)

Messrs. Riopell (Dkt. #3), Jensen (Dkt. #4), and Williams (Dkt. #9) have filed with this Court consent forms to opt-in to the proposed class. In addition, Joseph Falconer filed a consent form with this Court on May 10, 2012 (Dkt. #19), but he has not filed a corresponding declaration.

3

## III.   FACTUAL AND LEGAL ANALYSIS

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, guarantees compensation for all work or employment engaged in by employees who are covered by the Act. *See, e.g., Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 359 (2d Cir. 2011).

The FLSA  prohibits an employer from engaging any employee "in commerce, or in the production of goods for commerce, for a workweek longer than forty hours  unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). To establish liability under the FLSA, a plaintiff claiming unpaid overtime must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work. *Kuebel*, *supra*, 643 F.3d at 361.

Substantively, two issues are central to the Plaintiff's request for conditional certification, both of which demonstrate that the proposed class is too individualized to make mass treatment of the claims judicially appropriate. Those issues – whether the proposed class members are "similarly situated" and whether they would be classified as exempt under the "outside sales" exemptions of state and federal law – will be addressed in turn:

### A.   "SIMILARLY SITUATED" INDIVIDUALS

An employee who has not been paid overtime compensation, as generally outlined above, may bring an action on behalf of himself and others who are "similarly situated" and were affected by a employer's "common policy." 29 U.S.C. § 216(b); *see also White, et al., v. Rick Bus Co.*, 743 F. Supp. 2d 380, 386 (D. N.J. 2010).

4

As the FLSA does not define "similarly situated," the federal courts have generally adopted a two-stage analysis to evaluate the composition of a proposed employee "class." At the first stage, the plaintiff typically bears the burden of establishing a "factual nexus" between the employee's circumstances and those of proposed class members. *See, e.g., White*, *supra*, 743 Supp. 2d at 387. A plaintiff who satisfies this burden generally achieves for the proposed class a grant of "conditional certification," permitting those who "opt-in" the right to join the class and proceed under a single cause of action. Id. At the second phase, or "reconsideration stage" (typically after the completion of discovery), the conditional certification that was previously approved can be revoked if a court determines that the proposed class does not, in fact, satisfy the FLSA's "similarly situated" requirement. Id.

Conditional certification is "not automatic." *Jenkins v. The TJX Cos.*, No. 10-CV-3753 (ADS)(WDW), 2012 U.S. Dist. LEXIS 46394, at *11 (E.D.N.Y. Mar. 31, 2012). District courts have the discretion to hear collective grievances of potential class members only in "appropriate cases." Id. (citing *Hoffmann-La Roche, Inc., v. Sperling*, 493 U.S. 165, 169 (1989)). While the burden on the plaintiff at this stage is modest, "it is not non-existent." Id. A plaintiff has the burden of demonstrating "a reasonable basis for his claim that there are other similarly situated employees." *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). "Mere allegations will not suffice; some factual evidence is necessary." Id. The 'modest factual showing' standard 'is not a mere formality.'" *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. LEXIS 68942, at *9 (E.D. Wis. Sept. 11, 2008) (quoting *Boyd v. Jupiter Aluminum Corp.*, No. 2:05-CV-227, 2006 U.S. Dist. LEXIS 35654, at *9 (N.D. Ind. May 31, 2006)).

5

When deciding whether to conditionally certify a class, it is proper for a court to give more weight to the diverse activities of the subject employees than to evidence of uniform policies. *Marlo v. United Parcel Serv.*, 639 F.3d 942, 948 (9th Cir. 2011).[1] Evidence of company policies are relevant but not dispositive, since the policies may not reflect the actual work of the proposed class members. Id. Even at the preliminary or "conditional" stage, a court must find "some identifiable factual nexus which binds the named plaintiffs and potential class members together" as being subjected to a particular practice." *Jenkins*, *supra*, 2012 U.S. Dist. LEXIS 46394, at *11.

## 1. Beer Capitol's merchandisers are not interchangeable.

Among other responsibilities, Beer Capitol expects its merchandisers to perform the following primary job duties:

- Move and stack beer;

- Fill product coolers;

- Rotate stock, so that beer which is "oldest" is placed in front and sold first. (Driscoll Decl.; Zeman Decl..)

Beer Capitol divides its merchandisers between "chain" stores (such as Pick 'n Save and Walmart) and independent liquor stores. (Driscoll Decl. ¶ 4; Zeman Decl. ¶ 5.) The difference between these jobs is like "night and day." (Zeman Decl. ¶ 6.)

Beer Capitol's merchandisers routinely see significant variation in job duties day-to-day and week-to-week as a consequence of client needs, i.e. (the requirements of store owners or store managers, and consumer preferences). Merchandisers at the "chain" stores do the "heavy lifting" in a physically demanding job in which they are

---

[1] The *Marlo* decision holds that a district court is required to make a "factual determination as to whether class members are *actually* performing similar duties."

6

routinely responsible for stacking and organizing a large quantity of beer – frequently totaling hundreds of cases in a single day – as part of their job duties. (Driscoll Decl. ¶ 5; Zeman Decl. ¶ 7.) Merchandisers at the independent stores have more freedom and discretion to build creative product displays. (Zeman Decl. ¶ 9.)

Merchandisers at "chain" stores have little discretion in the placement of beer in stores. (Driscoll Decl. ¶ 6.) Placement decisions are made by store owners and managers, who generally require merchandisers to follow a floor plan for product placement that has no variation and cannot be altered. Id. Merchandisers at independent stores have more freedom to build creative displays that will draw consumers' attention to Beer Capitol's brands. (Zeman Decl. ¶ 9.) Merchandisers for independent stores are expected to identify opportunities where store displays can be expanded and Beer Capitol's brands can be displayed more prominently than those of competitors. Id. at ¶ 10. Beer Capitol looks to its independent-store merchandisers, in particular, to be salespeople who will focus on trying to capture a larger share of store space for Beer Capitol's brands. Id.

In these respects, the Beer Capitol merchandiser job might vary significantly, depending upon the sales opportunities that exist. As a result, it cannot reasonably be said that all Beer Capitol merchandisers are exactly alike and that, for the purposes of the FLSA, one is interchangeable with another.

In determining whether employees are similarly situated in a misclassification case, a court should consider the employees' duties, the amount of time spent on those duties, and the extent of discretion exercised. *Aguirre v. SBC Commc'n, Inc.*, No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, at *12 (S.D. Tex. Apr. 11, 2006). The Beer Capitol

7

merchandisers have varying duties, spend unequal blocks of time completing those duties, and have varying degrees of discretion in deciding how Beer Capitol's brands are presented in stores. They may have little opportunity or extensive opportunity at initiating efforts to secure more shelf and floor space for the brands that Beer Capitol stocks, one important aspect of their job duties.

For all of the foregoing reasons, Beer Capitol merchandisers are individualized and not "similarly situated." Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

## 2. A generic job description does not mean that employees are 'similarly situated.'

The Plaintiff's presentation of a generic job description for all of Beer Capitol's merchandisers does not strengthen his case, nor should it be the basis for granting conditional certification and approving notice to potential class members.

A generic job description does not warrant notice to other potential class members, even if the job title is identical and the job duties appear to be the same. In *Drew v. Shoe Show, Inc.*, the United States District Court for the Southern District of Illinois rejected conditional certification that the plaintiff sought based on allegedly common corporate policies and job descriptions for Shoe Show store managers. *Drew v. Shoe Show, Inc.*, No. 10-cv-656-JPG-PMF, 2011 U.S. Dist. LEXIS 106503, at *9 (S.D. Ill. Sept. 19, 2011). The court found that beyond certain "core functions," there was no evidence that all of the same managers performed similar activities for the same percentage of work time such that they were similarly situated. *Id.* at *10. Further concluding that the plaintiff had failed to demonstrate a reliable foundation for the

8

asserted personal knowledge of other store managers' job duties, the court denied conditional certification. Id. at *12.

In the same way, while Beer Capitol's merchandisers have the same job title, they do not perform the same activities for the same percentage of work time. While certain "core functions" may run throughout, the merchandisers are not the same and cannot be cast the same.

Because Beer Capitol merchandisers are individualized and not "similarly situated," this Court should deny the Plaintiff's Motion for Conditional Certification.

## 3. Cursory assertions are insufficient for a grant of conditional certification.

As set forth above, each of the plaintiff declarants makes identical assertions regarding their compensation with Beer Capitol. Each asserts not being paid any additional compensation when working more than forty (40) hours in a workweek or more than five (5) days in a workweek. Specifically, each asserts: (1) "If I work five ten-hour days, I am only paid for five eight-hour days, or forty hours"; (2) "When I work more than forty hours in five days, I receive no additional compensation for those extra hours"; (3) "[I]f I am scheduled and work a sixth day in a week, I am generally paid for six eight-hour days that workweek"; (4) When I work six days a week and more than forty hours in that week, I am not paid overtime, I am simply paid for forty-eight hours that week"; and (5) If I worked six ten-hour days, I am only compensated for six eight-hour days – or forty-eight hours with no overtime premium compensation." (Dkt. ##16-19, ¶¶ 6, 7.)

The declarants also state identically, "I have discussed Beer Capitol Distributing's compensation practices with other Merchandisers, including discussing that they were

9

also paid a salary without overtime compensation when they worked over forty (40) hours a week." (Dkt. ##16-19, ¶¶ 9.)

The plaintiff declarants make these identical (word-for-word) allegations without stating when such pay practices allegedly occurred, the circumstances under which such pay practices allegedly occurred, how often such pay practices allegedly occurred, the total amount in overtime compensation that each is allegedly owed, or how they allegedly have knowledge (other than in casual conversations) that other merchandisers were allegedly not paid overtime despite having earned such compensation. This is especially lacking in evidentiary support, since merchandisers do not have any role in setting the compensation for any Beer Capitol employees and do not have access to Company payroll records. (Zeman Decl. ¶ 4.)

Courts have found cursory assertions like these insufficient for a grant of conditional certification, even under the lenient standard in which the plaintiff must present only a modest factual nexus. For example, in *Dreyer v. Altchem Envtl. Serv.*, the plaintiffs relied on affidavits which stated, "To the best of my information and belief, everyone I worked with was paid the same way and treated the same way ..." *Dreyer v. Altchem Envtl. Serv.*, No. 06-2393, 2007 U.S. Dist. LEXIS 71048, at *10, (D.N.J. Sept. 25, 2007). The court rejected all of the affidavits, stating, "Such assumptions might be tenable if the affiants had presented any amount of detail to bolster their assertions. In support of their FLSA claim, the affiants state only, 'My overtime was paid at a lower rate than the average wage of different rates I worked each week' and '[m]any times I worked through lunch, [and this] was not counted towards my overtime hours." Id. The court found that these statements were "unsubstantiated assertions" that did not

10

demonstrate a modest factual nexus. Id.; *See also Kronick v. Bebe Stores, Inc.*, No. 07-4514, 2008 U.S. Dist. LEXIS 78502, at *8 (D.N.J. Oct. 2, 2008).[2]

In *Sjoblom v. Charter Commc'n*, 571 F. Supp. 2d 961, 968 (W.D. Wis. 2008), the United States District Court for the Western District of Wisconsin stated: "[A]n affiant must testify about what he observed himself and not speculate about what he thinks happened. ... [A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience.'" Id. (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).

The plaintiff declarants in the present case lack a viable evidentiary basis upon which to assert that the compensatory circumstances of all Beer Capitol merchandisers are identical. As set forth below, the pay for some potential class members may have varied, particularly in light of Beer Capitol's corporate transactions during the relevant time period. (*See, e.g.,* Decl. of Chris Jensen, Dkt. #15, referencing Beer Capitol's acquisition of Miller-Brands Milwaukee, LLC; *see also* Decl. of Lee Riopell, Dkt. #16, referencing Beer Capitol's acquisition of W.O.W. Distributing Co., Inc.)

As such, the plaintiff declarants and the proposed class may lack the essential factual nexus necessary for a finding that they are "similarly situated." Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

## 4. Proposed class members may not have been subject to the same compensation policies.

The proposed class in the present case is not appropriate because identical policies may not have run throughout. For example, some – but perhaps not all – in the

---

[2] In *Kronick*, the court stated, "[G]eneral and vague assertions might be tenable if plaintiff affiants had presented more detailed evidence to bolster their assertions." Id.

11

proposed class of merchandisers may have been subject to a payroll system of automatic deductions for lunch breaks. In addition to not being a *per se* violation of the FLSA, this policy would not, by itself, justify a collective action. *See, e.g., Martinez v. Regency Janitorial Serv.*, No. 11-C-259, 2012 U.S. Dist. LEXIS 8941, at 10-11, (E.D. Wis. Jan. 26, 2012).[3]

Moreover, this circumstance would separate the potential class members factually, requiring a separate wage and hour analysis for each one. Whether the Plaintiff or any potential class member took a lunch break under an automatic deduction scheme is a matter that makes the merchandisers unsuitable for class treatment.

As to those subject to an automatic lunch-break policy, a trier-of-fact would have to determine whether each individual merchandiser took a lunch break; the frequency and duration of those breaks; whether each merchandiser was advised to report worked lunch breaks; whether each merchandiser did, in fact report worked lunch breaks; and how many, if any, of those lunch breaks were compensated. This makes "class" treatment of the Beer Capitol merchandisers unwieldy and not in conformity with efficient or economic disposition of this controversy. As the court noted in *Shim v. Echosphere, L.L.C.*:

> "While the opt-in plaintiffs apparently held similar job descriptions and were subject to similar pay and time-tracking policies to those of Plaintiff Shim, they all worked in varied locations spanning from New York to California. As Defendant notes, this is important because the court would have to analyze the work experience and employment policies of each individual at each location across the nation. Further, the alleged violations occurred during different time periods, with individual claims varying from a few months to a few years. This indicates that the opt-in plaintiffs would have different

---

[3] *See also MacGregor v. Farmers Ins. Exch.*, No.2:10-CV-03088, 2011 U.S. Dist. LEXIS 80361, at *15 (D.S.C. July 22, 2011). Bona fide meal periods are not work time. *Prise v. Alderwoods Group, Inc.*, 817 F. Supp. 2d 651, 681 (W.D. Pa. 2011).

12

statutory damages claims, and some may even have liquidated damages claims that would oblige the court to conduct a 'willfulness' analysis as to some – but not all – of the plaintiffs.

"Moreover, it is wholly unclear whether the opt-in plaintiffs were subjected to the same lunch-break policies and practices, whether these policies and practices were established in the same manner by the same decision-maker, and whether the FLSA violations allegedly experienced by the opt-in plaintiffs were sufficiently similar. ... In sum, the court finds that the opt-in plaintiffs are not similarly situated to Plaintiff Shim because of their 'significant individual considerations,' which would likely multiply if the court conditionally certified a nationwide class." No. 10-60024-CIV-ZLOCH, 2010 U.S. Dist. LEXIS 135984, at *5-7 (S.D. Fla. Dec. 20, 2010).

Potential variations in the pay structure among potential class members raise the prospect of individualized inquiries. Members of the proposed class may be unique on a matter that is central to this dispute. As a result, permitting this matter to proceed in "class" fashion may be risky, since further inquiry may reveal additional nuances in compensation that further differentiate the potential members of the class. As a result, there may be further evidence down the road that the prospective members of the class are too dissimilar to be "joined" and that conditional certification should never have been granted. Given this circumstance, the Court should invoke appropriate caution. "Class" treatment of this litigation does not satisfy the judicial standard and is not appropriate under the present circumstances. Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

## 5. Some merchandisers may have performed work that is not compensable.

Some of the merchandisers in the proposed class may have performed work – now claimed to be unpaid overtime – that actually was not compensable, indicating another way in which they are not similarly situated. This might include such matters as

13

non-principal preliminary or postliminary work (29 U.S.C. § 254(a)), various types of training (29 C.F.R. §§ 785.27-785.32), and/or insignificant time beyond scheduled working hours (29 C.F.R. § 785.47), none of which qualifies as compensable work. Since Beer Capitol merchandisers work alone, the specific aspects of their workdays – particularly those for which they claim unpaid overtime – would be potentially key in determining whether and to what extent any of them worked compensable overtime.

As with the lunch-break issue, this raises the prospect of individual assessments with respect to the application of the FLSA and Wisconsin wage-hour laws to each merchandiser in the proposed class.

If a trier-of-fact must sort through the specifics of a merchandiser's workday to determine whether the FLSA was violated and, if so, what to award as the appropriate relief, class certification is not appropriate. "Where the plaintiff has not made at least a modest factual showing that certification is appropriate, '[i]t would be a waste of the court's and the litigants' time and resources to notify a large and diverse class, only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.'" *Adair*, *supra*, 2008 U.S. Dist. LEXIS 68942, at \*9-10 (quoting *Freeman v. Wal-Mart Stores,* 256 F. Supp. 2d. 941, 945 (W.D. Ark. 2003)).

Given the likelihood of a such a circumstance in the present case, Beer Capitol merchandisers are individualized and not "similarly situated." Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

14

**B.** **"OUTSIDE SALES" EXEMPTION**

Some Beer Capitol merchandisers, including some of those in the Plaintiff's proposed class, may qualify for the outside sales exemption under the FLSA and Wisconsin wage-hour laws, further differentiating the group and making this litigation inappropriate for class treatment.

Outside sales personnel are exempt from the "overtime" requirements of state and federal laws. The exemption applies when an employee is primarily engaged, away from the employer's place of business, "in making sales[4] or obtaining orders or contracts for services or for the use of facilities." 29 C.F.R. § 541.500(a)(1), (2). *See also Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631 (7th Cir. 2010). In determining the primary duty of an outside sales employee:

> "[W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work, including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries, and attending sales conferences." 29 C.F.R. § 541.500(a)(2)(b).

**1.** **Beer Capitol merchandisers fall within the parameters of the outside sales exemption.**

Employees who determine their own pattern of work calls may qualify for the outside sales exemption. *Hodgson v. Krispy Kreme Doughnut Co.*, 346 F. Supp. 1102 (D.N.C. 1972). The fact that employees receive little or no direct supervision in carrying out their daily tasks is indicative of sales-related activity that qualifies for the FLSA's outside sales exemption. *Hodgson v. Greene's Propane Gas Serv., Inc.*, No. 2052,

---

[4] Section 3(k) of the FLSA defines "sales" to include "any sale, exchange, contract to sell, consignment for sale or other disposition.

15

1971 U.S. Dist. LEXIS 14602 (D. Ga. 1971).[5] When a route driver's activities are directed toward the goal of selling the product at issue, the employee may be considered exempt. Id.

Beer Capitol's merchandisers fall within these general parameters. The merchandisers' day-to-day activities, including their efforts in building displays and creating eye-catching presentations, promote Beer Capitol's brands and prompt consumers to purchase those brands over those of competitors. Further, those efforts may also increase the amount of floor or shelf space that is reserved for Beer Capitol's brands.(Zeman Decl. ¶ 10.)

Merchandisers' work on a daily basis includes identifying opportunities to increase the size of a store's floor space that is committed to Beer Capitol's brands. Successful suggestions to store owners and managers will ultimately result in more sales – and revenue – for both the individual store and Beer Capitol. In other words, Beer Capitol's merchandisers are not simply displaying beer with no concern for whether any of it is sold. Rather, they are creating a vehicle – an enticing and attractive sales display – that will increase sales at grocery and liquor stores.

Given the individualized nature of the merchandisers' activities, "class" treatment of this controversy is not appropriate. Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

## 2.     Beer Capitol merchandisers look for sales opportunities.

Beer Capitol's merchandisers are focused on sales throughout a given week. Since they do not deliver beer to client stores, their work is not concerned with whether

---

[5] In *Green's Propane*, the court held as exempt certain route drivers who worked away from their employer's place of business and independent of the employer's personal supervision.

16

the product – beer – is on site and in sufficient quantity. Rather, their goal is to generate interest in Beer Capitol's brands, such that consumers will ultimately purchase those brands. Even displaying cases of beer is not a stockroom task but one that is meaningful because it is part and parcel of the "bigger picture" that prompts consumers to buy that product. When they reach an agreement for more shelf space, for example, they are doing work that generates sales, rather than simply stimulating sales. *See, e.g., Jirak v. Abbott Lab. Inc.*, 716 F. Supp. 2d 740 (N.D. Ill. 2010).

Given the prospect that some of the Beer Capitol merchandisers may fall within the FLSA's outside sales exemption, this litigation is not appropriate for "class" treatment. As with the inquiry regarding whether the merchandisers are "similarly situated," binding the group into a single unit may not prevent factual inquiries into whether individual merchandisers were entitled to "overtime" compensation. Simply asserting that all of the merchandisers are the same discounts the relative differences among them and the application of the wage and hour laws. In other words, there is more to the merchandiser picture than meets the eye, and it cannot be automatically concluded that all are non-exempt employees.

Given the potential variation regarding the exempt status of the merchandisers in the present case, the potential members of the proposed class are not similarly situated. Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

## IV. CONCLUSION

The Plaintiff requests that this Court conditionally certify a wage class comprised of all of the Beer Capitol merchandisers, based on the assertion that they have identical job duties and have been paid under precisely the same compensation structure. The

17

reality, however, is that the merchandiser job can vary significantly from day to day and store to store, making blanket comparisons unrealistic. Merchandisers who visit "chain" stores move significant volumes of beer, while merchandisers who visit independent stores play a bigger role in presentation, where they have discretion to make suggestions and enhance the displays that hold the Company's brands of beer.

Merchandisers are taught to look for opportunities to build creative product displays and suggest ways in which the Beer Capitol space can be expanded. Such suggestions may ultimately generate invoiced transactions between Beer Capitol and a merchant.

Accordingly, Beer Capitol merchandisers are not mirror images. This is not assembly-line work, and the merchandisers cannot reasonably be portrayed in the same light. This alone makes "class" treatment of this litigation inappropriate.

In addition, some prospective members of the proposed wage class may have worked under varying compensation principles, such as lunchtime deductions. The difference may result from varying time frames that members of the proposed class worked for Beer Capitol or its predecessor organizations. These differences suggest the possibility of individual inquiries into the pay policies that were in play and whether they were applied appropriately to potential class members. If not all members of the proposed class were compensated in the same way, it cannot be said that they are "similarly situated" for the purposes of the FLSA and Wisconsin wage-hour laws.

The intent behind "class" treatment is the efficient management of large-scale litigation, which is justified by the similarity in class members that makes individual investigations unnecessary. When factual variations require the tier-of-fact to take a

18

closer look at one or more class members, the purpose and intent behind "class" treatment is defeated. Such is the situation in the present case, where potential differences among prospective class members' job duties, pay structure, and inclusion in the wage laws' outside sales exemption suggest a class with substantial variation that does not fit neatly together as a nearly identical group.

The variation among the potential class members in the present case cannot be cured by citing the merchandiser job title or describing them with identical language that suggests that they are all the same. An attempt to create "cookie-cutter" plaintiffs ignores that inescapable realities about the unique and individual aspects of the merchandiser job. Those realities demonstrate that this is an ill-suited group for "class" treatment.

For all of the reasons set forth above, the members of the potential class are not similarly situated. Therefore, this Court should deny the Plaintiff's Motion for Conditional Certification.

Respectfully submitted this 17th day of May, 2012.

**BEER CAPITOL DISTRIBUTING, INC.**

By:    s/ Ann Barry Hanneman
       Ann Barry Hanneman, Esq. (SBN 1008899)
       Brian G. Nuedling, Esq. (SBN 1035493)
       JACKSON LEWIS LLP
       20975 Swenson Drive, Suite 250
       Waukesha, WI 53186
       Telephone: (262) 717-3170
       Facsimile: (262) 717-3186
       Email: ann.hanneman@jacksonlewis.com
                 Brian.nuedling@jacksonlewis.com

19