UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MATTHEW TOBIN
on behalf of himself and all
others similarly situated,

                    Plaintiffs,

v.

BEER CAPITOL DISTRIBUTING,
INC., et al.
                    Defendants.

CASE NO. 12-CV-0274

HON. CHARLES N.
CLEVERT, JR.

BRIEF IN SUPPORT OF
JOINT MOTION FOR
FINAL APPROVAL
OF CLASS AND COLLECTIVE
ACTION SETTLEMENT

<u>Introduction</u>

This settlement resolves the dispute between Beer Capitol Distributing,

Inc., Aldo , Madigrano, Ronald Fowler and Michael Merriman (collectively

hereinafter "Beer Capitol") and Matthew Tobin ("Tobin") as well as the classes of

Beer Capitol Beer Merchandisers Tobin represents. Tobin has alleged that Beer

Capitol failed to properly compensate its Beer Merchandisers for hours that they

worked in excess of forty hours per workweek in violation of the Fair Labor

Standards Act ("FLSA") and Wisconsin Wage Payment and Collection Laws

("WWPCL"). (Dkt. 1.)

    A Settlement Agreement was reached between the parties after extensive

arm's length negotiations which included using the assistance of a neutral

mediator. (Dkt. 33-1.) On October 19, 2012, the Court preliminarily approved

this class action settlement, and the court approved notice was mailed to the class members on November 2, 2012. (Dkt. 35; Stacy Roe Decl., ¶ 9.) Now, upon the closing of the Notice Period on January 2, 2012 and prior to the February 15, 2013 Fairness Hearing, the parties file their Joint Motion for Final Approval of the Class Action Settlement and this Brief in support of the same.

The parties now move this Court for a Final Order approving the settlement and to include the following:

1) Finally approving the Settlement Agreement, adjudging its terms to be fair, reasonable, and adequate, and entering an order directing consummation of its terms and provisions by the parties;

2) Finally approving the Enhancement Payment to the Class Representative;

3) Approving Class Counsel's motion for costs and attorneys' fees, and awarding Class Counsel's attorneys' fees and costs;

4) Finally approving the settlement payments to be paid to the participating Settlement Class Members pursuant to the allocation formulas set forth in Exhibit A to the Settlement Agreement (Dkt. 33-1);

5) Dismissing this Lawsuit on the merits and with prejudice.

Statement of Facts

A.    Background

Tobin filed a class and collective action complaint against Beer Capitol on March 21, 2012 for unpaid overtime in violation of the FLSA and WWPCL. (Dkt. 1.) Plaintiff alleged, on behalf of himself and all others similarly situated, that Beer Capitol failed to pay their Beer Merchandisers premium overtime compensation, at time and one-half the regular rate, for hours worked in excess

of forty hours per workweek. (Dkt. 1.) Plaintiff maintains that he and Beer Capitol's other Merchandisers are not exempt from the provisions of the FLSA, and that Beer Capitol' failure to pay overtime premium compensation was unlawful. (Dkt. 1.)

Beer Capitol filed an Answer denying the material allegations in the complaint on April 23, 2012 and raised certain defenses including the administrative, executive, and/or outside sales exemptions from the provisions of the FLSA. (Dkt. 10.) That same day, Tobin filed a motion with the Court to conditionally certify the action as a collective action under 29 U.S.C. § 216(b). (Dkt. 11.)

B.     History of Settlement Negotiations

During the FED. R. CIV. P. 26(f) conference, the parties met in person and discussed the future of the case including the discovery of items the parties anticipated needing and the potential for settlement. (Dkt. 34, ¶ 3.) The parties agreed that Beer Capitol would provide certain payroll records by mid-summer and that the parties would attempt to mediate the matter by the end of summer. (Dkt. 34, ¶ 3.) During the Court's Scheduling Conference on July 24, 2012, the parties informed the Court of their intent to mediate the case. Upon this information, the Court agreed to toll the statute of limitations of the putative collective action members for forty-five days and stayed its decision on Tobin's motion for conditional certification so that the parties could attempt to negotiate a resolution of the matter. (Dkt. 29.)

Case 2:12-cv-00274-CNC   Filed 01/25/13   Page 3 of 21   Document 45

The parties engaged in discovery following the FED. R. CIV. P. 26(f) conference, including the exchange of initial disclosures and the service of formal document requests and interrogatories. (Dkt. 34, ¶ 4.) Beer Capitol produced to Plaintiff's Counsel timesheets for all of the Merchandisers employed by Beer Capitol during the three-year period prior to the filing of the complaint. (Dkt. 34, ¶ 4.) Plaintiff's Counsel used the timesheets to calculate the potential damages of each putative class member by entering each Merchandiser's hours and rate of pay into an Excel workbook. (Dkt. 34, ¶ 5.) This information was shared with Beer Capitol's Counsel prior to mediation. (Dkt. 34, ¶ 5.) Plaintiff's Counsel and Beer Capitol's Counsel were subsequently able to negotiate a settlement for the Plaintiff and putative class members at a daylong mediation session with an experienced wage and hour mediator on September 6, 2012. (Dkt. 34 ¶ 6.) The Parties signed a Settlement Agreement thereafter. (Dkt. 33-1.)

The parties agreed to stipulate to certify Tobin's FLSA collective action pursuant to 29 U.S.C. § 216(b) ("Collective Class") and the Plaintiff's FED. R. CIV. P. 23 class for Wisconsin state law overtime claims ("Wisconsin Class"). The Parties agreed to the following definition of the Collective Class:

> All persons employed by Beer Capitol Distributing, Inc., in Wisconsin as a Merchandiser at any time during the period of March 21, 2009 to May 1, 2012 who were not paid overtime premium compensation in any workweek in which he or she worked more than forty hours during that period.

(Dkt. 33-2.) The Parties agreed to the following definition of the Wisconsin Class:

> All persons employed by Beer Capitol Distributing, Inc. in Wisconsin as a Merchandiser at any time

> during the period of March 21, 2010 to May 1, 2012 who were not paid overtime premium compensation in any workweek in which he or she worked more than forty hours during that period.

(Dkt. 33-2.)

On October 19, 2012, this Court approved the proposed Wisconsin Class and Collective Class definitions, appointed Matthew Tobin the Class Representative for both classes, and appointed Attorney Larry A. Johnson as class counsel for both the Wisconsin Class and Collective Class. (Dkt. 35.) The Court also approved the proposed notice of class action allowing putative collective class members to opt in to the Third Year Collective Fund, which is itself based upon differences between the FLSA and the WWPCL. (Dkt. 35.)

Although Beer Capitol denied all of the allegations in this lawsuit, and without admitting or conceding any liability or damages whatsoever, they also seek to avoid the burden, expense, and uncertainty of continuing to litigate the case. (Dkt. 33-1.) The parties recognized that the outcome of this matter is uncertain and that achieving a final result through the litigation process would require additional risk, discovery, time, and expense. (Dkt. 33-1.) Moreover, doing so would place the outcome in the matter in the hands of a third party – a jury. In the interests of procuring an effective, efficient, and fair result, the parties negotiated the settlement agreement that they now ask this Court to finally approve. (Dkt. 33-1.)

C.      The Settlement Agreement

During the parties' initial discovery, Beer Capitol produced all of the time

records for each of the fifty-eight (58) Merchandisers they employed at various times between March 21, 2009 through May 1, 2012. (Dkt. 34, ¶ 4.) These time records included the start time and stop time for each day of work that each Merchandiser performed in the two and three-year statutory periods, as well as the amount of time taken for lunch, if any. (Dkt. 34, ¶ 4.) Beer Capitol also furnished the rate of pay for each of the fifty-eight (58) Merchandisers they employed in the statutory period. (Dkt. 34, ¶ 4.)

Because the FLSA collective action is an opt-in action and the Wisconsin state law class action is an opt-out action, and because the FLSA has a three-year statute of limitations and a Wisconsin state law claim has a two-year statute of limitations, two settlement funds were necessary.

1. The Two Year Class Fund covering the time period of March 21, 2010 through April 1, 2012 (the applicable statute of limitations period for the Wisconsin Class);

2. The Third Year Collective Fund covering the time period of March 21, 2009 through March 20, 2010 (the applicable statute of limitations period for the Collective Class).

To recover from the Third Year Collective Fund, a Class Member was required to return a consent form to the claims administrator. (Dkt. 33-1, ¶ 4.) If a Class Member elected to opt into the FLSA collective action by returning a consent form, he or she will receive his or her pro rata portion of the Third Year Collective Fund. (Dkt. 33-1, ¶ 4.) If a Class Member did not opt into the FLSA collective action by returning a consent form, he or she will only receive his or her pro rata portion of the Two Year Class Fund. (Dkt. 33-1, ¶ 4.) If a Class Member elected to exclude him or herself from this action, he or she will not

receive anything, nor will he or she be bound by any decision of this Court.

(Dkt. 33-1, ¶ 4.) The Settlement Fund will be allocated as follows:

| | |
|---|---|
| Two Year Class Fund | $ 123,153.53 |
| Third Year Collective Fund | $ 55,179.81 |
| Attorneys' Fees and Costs | $ 91,666.67[1] |
| Class Representative Incentive | $ 5,000.00 |

The amounts of the Two Year Class Fund and the Third Year Collective Fund were calculated by determining the respective percentages of settlement fund worked by the Class Members in the two time periods:

$$\$105,789.51 / \$153,189.25 = 69.0580\%$$
$$69.0580\% \times \$178,333.33 = \$123,153.53$$

$$\$47,339.74 / \$153,189.25 = 30.9419\%$$
$$30.9419\% \times \$178,333.33 = \$55,179.81$$

(Dkt. 34, ¶ 7.)

In other words, the two settlement funds are distributed in a manner exactly proportionate to the amount of overtime hours worked by the Merchandisers in each of the two time periods.

Plaintiff's Counsel carefully analyzed the data produced by Beer Capitol and entered the hours each Merchandiser worked between March 21, 2009 and April 1, 2012 into a separate spreadsheet of an Excel workbook for each Merchandiser. (Dkt. 34, ¶ 5.) This workbook was used to calculate the amount of overtime premium compensation each Merchandiser would have been paid during the period from March 21, 2009 to April 1, 2012. (Dkt. 34, ¶ 5.) Each class member's damages were calculated in both the two years prior to the filing of the

---

[1] A separate motion is being filed on Tobin's motion for attorney's fees.

complaint and the third year prior to the filing of the complaint. (Dkt. 34, ¶ 5.) That figure was then doubled to calculate the Merchandiser's liquidated damages under the FLSA. (Dkt. 34, ¶ 5.) This calculation was used at mediation to determine what a fair and reasonable settlement of the Plaintiff's claims would be. (Dkt. 34, ¶ 5.) Under the terms of the settlement agreement, each Merchandiser will recover for all of the unpaid overtime compensation for the hours he or she recorded, plus an additional amount of liquidated damages. (Dkt. 34, ¶ 8.)

Each Wisconsin Class member was then assigned a percentage representing his or her pro rata share of the total potential damages for all class members in the class period. (Dkt. 34, ¶ 9.) Likewise, each Collective Action member was assigned a percentage representing his or her pro rata share of the total potential damages for all Collective Action members in the third year from the filing of the complaint. (Dkt. 34, ¶ 9.) The respective percentages were then applied to the Two Year Class Fund (i.e. Wisconsin state overtime law class fund) and the Third Year Collective Fund (i.e. FLSA collective class fund) to ensure the split of the Settlement Fund is distributed based upon the actual amount of overtime worked by each Class Member and that Class Member's rate of pay. (Dkt. 34, ¶ 9.)

The Settlement Agreement also provides for the payment of Class Counsel's attorneys' fees and costs in pursuing this matter. Plaintiff's agreement

with Class Counsel provides that Class Counsel will receive, as compensation for attorneys' fees and expenses, 33.3% of any settlement. (Dkt. 34, ¶ 11.)

## D.    Settlement Administration and Notices

The Notice provided to the settlement class members has been approved by the Court. (Dkt. 35.) The Notice explains the terms of the settlement in clear and unambiguous terms. (Dkt. 33-1 Ex. B). It also provides that those individuals who do not exclude themselves from the class action settlement will release their Wisconsin wage claims for the class period, from March 21, 2010 to May 1, 2012. (Dkt. 33-1 Ex. B). Additionally, the Notice provides that individuals who elect to opt-in to the FLSA collective class will be releasing their FLSA claims for March 21, 2009 to May 1, 2012. (Dkt. 33-1 Ex. B). The Notice provides clear guidance on the class members' ability to exclude themselves from the settlement – specifically requiring the request for exclusion to include: (1) the individual's full name; (2) the individual's address and telephone number; (3) the individual's dates of employment and job titles with Beer Capitol; (4) a specific statement as to why the individual wished to exclude him or herself from the settlement in this matter; and (5) be signed by the individual. (Dkt. 33-1 Ex. B).

The Notice further indicates that Plaintiff's counsel has agreed to petition the Court for attorneys' fees and costs out of the total settlement fund of $91,666.67 and has received no payment to date. (Dkt. 33-1 Ex. B). Finally, the Notice informs class members of their right to object to the terms of the

settlement, including Class Counsel's anticipated motion for attorney's fees and costs, and the procedure necessary to do so. (Dkt. 33-1 Ex. B).

Notice in this matter was sent by Rust Consulting, Inc., the claims administrator. (Roe Decl. ¶ 9.) Pursuant to the Settlement Agreement, Beer Capitol agreed to furnish the name, last known address, and Social Security number of each of the fifty-eight (58) class members. (Dkt. 33-1; Roe Decl. ¶ 7.) Pursuant to the terms of the settlement agreement, Rust Consulting, Inc. accessed the National Change of Address Database and updated the addresses of putative class members accordingly before mailing the notice. (Dkt. 33-1; Roe Decl. ¶ 8.)

The court-approved Notice was sent to the fifty-eight (58) putative class members on November 2, 2012. (Roe Decl. ¶ 9.) The sixty-day (60) Notice Period closed on January 2, 2013. (Roe Decl. ¶ 9.) Thirty class members have returned Consent to Join Forms. (Roe Decl. ¶ 12.) Each of the Consent Forms were complete and have been filed with the Court. (Roe Decl. ¶ 12; Dkt. 36-0 – 36-30.)

Of the fifty-eight (58) putative class members that received notice, Rust received zero (0) objections and received one (1) exclusion. (Roe Decl. ¶¶ 13-14.) Although the exclusion was received timely, it was not complete. (Roe Decl. ¶ 13.) The exclusion did not contain a signature as required by the Notice. (Johnson Decl. ¶ 6; Ex. A to Johnson Decl.) Class Counsel contacted the class member about the deficient exclusion from on January 18, 2012. (Johnson Decl. ¶ 7.) The class member informed Class Counsel that he no longer wanted to

exclude himself from the Rule 23 Class Action. (Johnson Decl. ¶ 7.) That same day, the class member emailed Class Counsel confirming that he wished to withdraw his exclusion. (Johnson Decl. ¶ 8.) Counsel for Beer Capitol has indicated that Beer Capitol does not object to this class member's withdrawal of his exclusion. (Johnson Decl. ¶ 8; Ex. C to Johnson Decl.) Therefore, there are no exclusions in this matter.

Rust Consulting, Inc. received one (1) undeliverable class notice. (Roe Decl. ¶ 10.) Rust performed an address trace using the class member's name, address, and Social Security number to locate other potential addresses. (Roe Decl. ¶ 10.) Rust obtained a new address for this class member and promptly re-mailed a class notice to this Class Member. (Roe Decl. ¶ 10.) This re-mailed class notice was returned a second time as undeliverable. (Roe Decl. ¶ 10.) Rust provided to Class Council the name of this class member. (Roe Decl. ¶ 10.) Upon receiving the name, Class Counsel did an additional diligent search for the class member by drafting emails to potential email addresses for the Class Member, contacting all available phone and cell phone numbers available for the Class Member, and leaving voicemails for potential relatives indicating that Class Counsel was attempting to locate this Class Member. (Johnson Decl. ¶ 10.) Class Counsel's efforts were fruitless. (Johnson Decl. ¶ 10.)

<u>Argument</u>

I.    An FLSA settlement is only valid and enforceable if its terms are fair, reasonable, and adequate, and it has been given Court approval.

An FLSA settlement requires court approval in order to be valid and enforceable. Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986). Employees can only bargain, waive, or modify their right to recovery if the parties agree to the terms of the settlement and the Court approves the settlement as a fair and reasonable resolution of the bona fide dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. Lynn's Food Store, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, a Fed. R. Civ. P. Rule 23(b)(3) class action settlement may only be approved if (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the Court finds that the settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e). In making this determination, the Court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. United Founders Life Ins. Co. v. Consumers National Life Ins. Co., 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted).

Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the Beer Capitol to withstand greater judgment; and the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation. City of

Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

II.     The Parties made significant efforts to maximize settlement
        participation and guarantee an accurate and comprehensive
        claims process.

        The parties believe that they obtained an acceptable rate of class

participation in the settlement, as fifty-eight (58) of the fifty-eight (58) putative

class members received the notice negotiated by the Parties and approved by the

Court, and thirty (30) of them have returned Consent to Join Forms. (Johnson

Decl. ¶¶ 5-7.) Though this number may seem low, thirty-three (33) of the class

members' notices indicated that they would receive zero (0) additional

compensation if they submitted an opt-in form because they did not work for

Beer Capitol during the thirdyear period. (Dkt. 33-1, pp. 20-21.) Therefore, these

class members had no reason to file an opt-in form. Pursuant to the terms of the

Settlement Agreement, the parties agreed that Rust Consulting, Inc. would

administer the Court-approved Notice and Settlement claims process. There

were no objections to the settlement, and the one exclusion has been withdrawn.

(Roe Decl. ¶¶ 13-14; Johnson Decl. ¶¶ 6-8.)

        Beer Capitol provided Class Counsel with the names and last known

addresses of the fifty-eight (58) beer merchandisers, and Rust Consulting, Inc.

accessed the National Change of Address Database and updated addresses

accordingly before mailing the Court-approved notice to each of the class

members. (Roe Decl. ¶¶ 7-9.) Class Counsel responded by phone and e-mail to

numerous inquiries regarding the settlement from class members who had received the Notice. (Johnson Decl. ¶ 9). For any Notices that were returned, Rust Consulting, Inc. ensured that efforts were made to identify the correct address for those individuals by running skip trace searches per the Settlement Agreement. (Roe Decl. ¶ 10.) For fifty-seven (57) of the fifty-eight (58) class members, Rust Consulting, Inc. was able to mail a notice that was not returned as undeliverable. (Johnson Decl. ¶ 7.)

All settlement class members who did not opt-out of the settlement are eligible for a payment under the terms of the Settlement Agreement. Payments for those individuals who cannot be located will not revert to Beer Capitol. (Dkt. 33-1, ¶ 10(d). As only zero (0) class members opted out of the settlement, and all but one (1) class member was located, fifty-seven (57) of the fifty-eight (58) class members will be receiving settlement funds. (Johnson Decl. ¶ 10.) Additionally, the thirty (30) class members that filed Consent to Join Forms to participate in the Collective Class Settlement Fund constitute 50.8% of the class.

This is an exceedingly high participation rate for a FLSA/Rule 23 state law wage and hour class action. Rosenburg v. Internat'l Business Machines Corp., Case No. 06-00430 PJH (N.D. Cal. July 12, 2007) (FLSA and New York, Kentucky and California state law claims, 30% response rate); Adams v. Inter-Con Security Sys., Inc., Case No. C-06-5428 MHP (N.D. Cal. Feb. 28, 2008) (FLSA and California, Illinois and Maryland state law claims - response rate of 37%).

This high participation rate, and high percentage of settlement funds claimed, far exceeds lower claim rates that have been granted approval. See Williams v. MGM-Pathe, 129 F.3d 1026, 1027 (9th Cir.1997) (approving a settlement in which $9,900 in claims were submitted against a $4.5 million fund); West Virginia v. Chas. Pfizer & Co., 314 F. Supp. 710 (S.D.N.Y.1970) (approving a settlement with a .04% claims rate).

Because nearly every member of the class will receive settlement funds, and because Class Counsel insured maximum participation in the settlement, the parties request that this class action settlement be granted final approval by the Court.

III.    Under the Settlement Agreement negotiated by the parties, significant benefits accrue to the Wisconsin and Collective classes.

The Settlement provided for up to $275,000 to be allocated to the settlement classes, of which $178,333.33 accrues to the class members, representing payment of all of the overtime compensation worked by the class members during the statutory periods, plus an amount of liquidated damages. The Settlement Agreement provides a substantial benefit to the class.

The settlement proceeds in this case represent time for which Tobin alleges that he and the class members worked in excess of forty hours per workweek without receiving overtime premium compensation to which he alleges he and the class members were entitled. The parties agreed to award each class member the overtime premium compensation to which he or she was

entitled based upon the timesheets provided to Plaintiffs' Counsel by Beer Capitol's Counsel and entered by Plaintiffs' Counsel into a usable Excel Workbook format. Thus, the $178,333.33 will be allocated based on the actual number of hours each individual worked in excess of forty hours for each workweek during the class periods.

The parties and their respective counsel believe that, under the terms of the Settlement Agreement, and based upon participation by class members in the settlement, class members are receiving substantial benefits through the settlement. The absence of any objection to the settlement amount as well as the strong participation rate, strongly suggests that the class will receive adequate benefit through the settlement.

V.     While the Settlement Agreement established a mechanism by which class members could exclude themselves or object to the Settlement Agreement, no members did either.

The Settlement Agreement provides a procedure for class members to object to the settlement or any of its terms. The Notice mailed to class members explained how class members could object to the settlement, if they so desired. Class members had sixty (60) days from the notice mailing to object to the settlement. There were no objections to the settlement that were filed or served. (Johnson Decl. ¶ 6). The fact that no one objected supports final approval of the settlement. See Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y.2000) ("If only a small number of objections are received, that fact

can be viewed as indicative of the adequacy of the settlement." (citations omitted)).

The Settlement Agreement also allowed class members to exclude themselves from the settlement by following a specific procedure. As with objections, the notice mailed to the settlement class members explained how settlement class members could exclude themselves from the settlement, if they so desired. Class Members had sixty (60) days from the notice mailing to opt out of the settlement. That the one exclusion has been withdrawn, and no members objected, this supports the conclusion that the settlement reached in this case is fair and reasonable. In Goodell v. Charter Communications, LLC, twenty-two individuals out of a class of 3,608, or .6% of the class, filed exclusions from the settlement. This Court granted final approval of that settlement. Case No. 08-cv-512 (W.D. Wis. 2008).

Because no class member objected to the terms of the settlement, nor did any class member exclude him or herself, the parties request that final approval of this settlement be granted.

VI.  Because of the time and effort that the Named Plaintiff devoted in pursuing the present litigation, the Parties respectfully request that the Court approve an enhancement payment to the Named Plaintiff in the amount of $5,000.00.

The amount of the enhancement payment being sought is reasonable. The Parties have requested that the Court authorize incentive compensation in the form of an enhancement payment to the Named Plaintiff in the amount of $5,000.00 for the time and effort devoted in pursuing the present litigation. This

amount was negotiated as part of the settlement package and will not diminish the recovery contemplated for any other class member. The Named Plaintiff assisted greatly in prosecuting this matter, and it is his name that has been in the public spotlight as the individual who brought this action against Beer Capitol. (Dkt. 34, ¶ 10.) The identity of the opt-in Plaintiffs, although in the public record, remains buried in other filings with the Court. The significance of this cannot be understated. Employees are increasingly concerned that the institution of litigation will negatively impact their ability to find subsequent employment. The Named Plaintiff initiated this action while others remained silent.

The Seventh Circuit recognizes that enhancement payments are appropriate in such circumstances and look to the following relevant factors: actions plaintiff took to protect the class's interests, the degree to which the class benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing litigation. Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). The proposed award in this case is reasonable in comparison to awards approved by other courts in this Circuit, which have been as high as $20,000 per named plaintiff. See Berger v. Xerox Corp. Ret. Income Guar. Plan, 2004 U.S. Dist. LEXIS 1819 (S.D. Ill. Jan. 22, 2004). Through the Named Plaintiff's actions, significant benefits have been achieved on behalf of all Beer Capitol Merchandisers. Accordingly, the parties submit that preferential treatment of the Named Plaintiff is fair and reasonable under the circumstances and request

that the Court approve the enhancement payment to the Named Plaintiff. Moreover, the Notice provided the class members with notice of the preferential treatment, yet no class member objected to the enhancement payment.

VII.   Class Counsel's fees and costs are fair and reasonable.

Class Counsel filed their petition for costs and attorneys' fees in conjunction with this motion. (Dkt. 37). The petition lays out Class Counsel's claim for attorney's fees, detailing both the factual and legal support for the petition to be granted. The court should award attorneys' fees as a percentage of the total settlement because that arrangement, based on Class Counsel's agreement with the Tobin, most closely replicates the market for the legal services provided. See Williams et al. v. Cargill Meat Solutions Corp, 09-cv-1006-LA, Dkt. 80-81 (E.D. Wis. March 23, 2011) (approving 33.33% FLSA settlement); Denk v. Pine Ridge Assisted Living, et al., 11-cv-210-wmc, Dkt. 81 (W.D. Wis. August 7, 2012); Kelly v. Bluegreen Corp., 3:08-cv-401-bbc, Dkt. 142, 151 (W.D. Wis. 2009); Lenahan v. Sears, Roebuck & Co., 2006 U.S. Dist. LEXIS 60307, *64 (D.N.J. July 10, 2006) (noting that 30% of common fund is regularly awarded in labor and employment class action litigation); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 188 (W.D. N.Y. 2005) (awarding 38.26% of total settlement in common fund case under FLSA); Lepinske v. Mercedes Homes, Inc., 2008 U.S. Dist. Lexis 111166 (M.D. Fla. 2008) (approving award of 33.33% of common fund settlement in FLSA case, pending objections); Gilliam v. Addicts Rehab. Ctr.

Fund, 2008 U.S. Dist. LEXIS 23016 at *15 (S.D.N.Y. March 24, 2008) (33.33% award "consistent with norms of class litigation").

The Seventh Circuit Court of Appeals has continuously held that the market rate approach should be followed in awarding attorneys' fees and costs in class actions. Continental Illinois Securities Litigation v. Continental Illinois Corporation, 962 F.2d 566, 572-73 (7th Cir. 1992). The market rate approach looks at what the market would likely charge for attorneys' fees and costs in a similar case, as determined at the outset of the case. In re Synthroid Marketing Litigation, 264 F.3d 712, 718-21 (7th Cir. 2001). Here, the controlling fee agreement entered into between Class Counsel and the named plaintiff indicates that Class Counsel may obtain a one-third contingent fee (33.33%). In this case, that amount would be $91,666.67 with costs paid in addition to this amount. That amount is reflective of the market rate, and is well within bounds of what other courts have approved in similar actions.

Class Counsel also submitted four declarations from other lawyers around the state who confirmed that the fee petition in this case comported with the market rate for similar actions. (Dkts. 41-44.) These four declarations are in addition to the Declaration of Attorney Larry A. Johnson and the summary of hours and costs. (Dkt. 39.) Finally, since the Court's preliminary approval of the Settlement Agreement in this matter, no class members have filed any objection to the amount of the attorneys' fees and costs, nor has Beer Capitol filed any objection to same. (Johnson Decl. ¶ 11.)

Because Plaintiff's petition for costs and attorneys' fees reflects the market rate, because that amount was agreed to by the Named Plaintiff, and because no class member has objected to this amount of attorneys' fees and costs, Class Counsel requests that the Court grant its request for an award of $91,666.67 in attorneys' fees and costs.

## Conclusion

For the reasons set forth above, the parties respectfully request that the Court enter an Order granting final approval of the settlement of this dispute on the terms and amounts set forth in the Settlement Agreement, and that the Court grant final approval of the settlement classes on the grounds set forth above.

JACKSON LEWIS
Attorneys for Defendants

 s/ BRIAN NUEDLING
Brian G. Nuedling
brian.nuedling@jacksonlewis.com
200 S. Executive Drive
Suite 101
Brookfield, WI 53005
262-717-3182

CROSS LAW FIRM, S.C.
Attorneys for Plaintiffs

 s/LARRY JOHNSON
Larry A. Johnson
ljohnson@crosslawfirm.com
Noah Reinstein
nreinstein@crosslawfirm.com
Nola J. Hitchcock Cross
njhcross@crosslawfirm.com
The Lawyers Building
845 N. 11th Street
Milwaukee, WI 53233
414-224-0000